IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SNIDER INTERNATIONAL CORP., et al.,        *
                                           *
        v.                                 *        Civil No. JFM-12-1248
                                           *
TOWN OF FOREST HEIGHTS, et al.             *
                                           *
                                        ******

## MEMORANDUM

Plaintiffs Snider International Corporation, Mark Cranford, Stan Derwin Brown, and Al Goyburu bring this putative class action against two Maryland towns: the Town of Forest Heights and the Town of Riverdale Park.[1]  Plaintiffs assert numerous claims under 42 U.S.C. § 1983 for alleged violations of their constitutional right to due process of law.  The claims pertain to traffic citations issued by defendants for violations of section 21-809 of the Maryland Transportation Article, which authorizes counties and municipalities throughout Maryland to establish automated speed monitoring systems, commonly known as speed cameras.  Pending before this court are two motions.  On June 29, 2012, defendants filed a motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 23.)  Plaintiffs filed an opposition brief and a cross-motion for partial judgment on the pleadings on July 27, 2012.  (ECF No. 30.)  On August 13, 2012, defendants filed their reply, which included their response to plaintiffs' cross-motion.

---

[1] Plaintiffs' original complaint did not name the Town of Riverdale Park as defendant. Instead, the complaint named the Mayor and Council of the Town of Riverdale Park, Maryland. (Compl. at 1, ECF No. 1.)  Defendants stated in their pending motion to dismiss that the citations at issue in this case had been issued by the Town of Riverdale Park and argued that the Mayor and Council of the Town of Riverdale Park "is not a legal entity capable of being sued for the acts or omissions of the Town of Riverdale Park." (ECF No. 23 at 18.)  Before filing their opposition to defendants' motion, plaintiffs filed a consent motion to amend the complaint to name the correct party. (ECF No. 26.)  The consent motion asked this court not to require defendants to re-file their motion to dismiss.  This court granted the consent motion on July 25, 2012, and plaintiffs filed an amended complaint that same day. (ECF Nos. 28, 29.)

(ECF No. 34.)  Plaintiffs moved for leave to file a sur-reply on August 17, 2012, and attached

their proposed sur-reply to that motion.  (ECF No. 35.)  Defendants opposed that motion on

September 4, 2012.  (ECF No. 36.)  Before this court ruled on the motion for leave to file a sur-

reply, plaintiffs filed a supplemental memorandum on September 12, 2012.  (ECF No. 38.)  The

motion for leave was granted on September 25, 2012, and plaintiffs re-filed their sur-reply.

(ECF Nos. 39, 40.)  No oral argument is necessary.  *See* Local Rule 105.6.  Defendants' motion

is granted and plaintiffs' cross-motion is denied for the reasons below.

## BACKGROUND

Following a two-year pilot program in Montgomery County, the state of Maryland

enacted legislation in 2009 that authorized the statewide use of automated speed monitoring

systems.  *See* Md. Code Ann., Transp. §§ 21-809, 21-810.[2]  These systems use various forms of

technology to monitor the speed at which vehicles travel on public roads.  Automated cameras

record the license plates of vehicles traveling at least twelve miles per hour above the posted

speed limit.  Maryland law authorizes counties and municipal corporations to impose civil

penalties for infractions that occur in certain areas, including highway work zones and school

zones.[3]  *See* § 21-809(b)(1).

The District Court of Maryland ("District Court"), a state court of limited jurisdiction, is

responsible for prescribing a uniform citation form for infractions, which are punishable by a

civil penalty not to exceed forty dollars.  § 21-809(c).  The citation form must include certain

information, including the identity of the vehicle's owner, the time and location of the violation,

and notice of the alleged violator's right to contest liability in the District Court.  § 21-809(d);

---

[2] Because each of the citations at issue in this case pertains to infractions that occurred in school zones, only section 21-809 is relevant here.

[3] The Department of State Police is also authorized to operate speed monitoring systems on state highways.  *See* § 21-810(a)(8)(iii).

*see also* Md. Code Ann., Cts. & Jud. Proc. § 4-401(13) (vesting the District Court with exclusive original civil jurisdiction over claims under section 21-809).  The citations also state, in bold letters, that payment of the civil penalty constitutes an admission of liability, and the form further provides that failure to pay the civil penalty or to contest the citation in a timely manner may result in suspension or non-renewal of the vehicle's registration.  (*See* Mot. Dismiss Ex. B & Ex. C; Md. Code Ann., Transp. § 21-809(d)(1)(xi).)

A citation recipient who elects to contest liability and stand trial must notify the issuing agency of that election at least five days before the payment due date shown on the citation.  Md. Code Ann., Cts. & Jud. Proc. § 7-302(e)(1).  When a citation recipient appears at trial, the citation is admissible to prove the fact of the violation and need not be corroborated or authenticated by the speed monitoring system operator responsible for that individual system. Md. Code Ann., Transp. § 21-809(e)(1).  The citation recipient nevertheless is entitled to summon a speed monitoring system operator to appear and testify at trial, provided that the request is made at least twenty days before the trial date.  § 21-809(e)(2).  At trial the government must submit into evidence "a certificate of training, issued to the 'speed monitoring system operator' upon completion of training; a daily log showing that the speed monitoring system operator performed successfully a self-test prior to producing a recorded image; and, a signed certificate of calibration, issued annually by an independent calibration laboratory." *Baker v. Montgomery Cnty.*, 50 A.3d 1112, 1116 (Md. 2012) (citing § 21-809(b)(2)–(4), (e)(1)). The District Court may consider as a defense any "issues and evidence" that it deems pertinent, including evidence that the citation recipient did not own, control, or operate the vehicle at the time of the alleged violation.  § 21-809(f)(1).

Between March and December 2011, plaintiffs allegedly received fifty-five citations issued by defendants for speed monitoring system infractions in various school zones. (Compl. ¶ 17.)  Some plaintiffs paid their citations upon receipt.[4]  Other plaintiffs refused to pay the citations yet elected not to contest liability in the District Court.  And a third group of plaintiffs challenged the citations in the District Court, lost, and refused to pay.  The District Court has entered default judgments against all plaintiffs who have not paid the citations.

Plaintiffs filed this putative class action on behalf of themselves and other similarly situated individuals on April 24, 2012.  The complaint identifies four classes of individuals:[5] (1) persons who were issued citations by the Town of Forest Heights and who paid the civil penalties associated with those citations (the "Forest Heights Paid Class"); (2) persons who were issued citations by the Town of Forest Heights and against whom default judgments were entered after they failed to pay the civil penalties associated with those citations (the "Forest Heights Default Class"); (3) persons who were issued citations by the Town of Riverdale Park and who paid the civil penalties associated with those citations (the "Riverdale Park Paid Class"); and (4) persons who were issued citations by the Town of Riverdale Park and against whom default judgments were entered after they failed to pay the civil penalties associated with those citations (the "Riverdale Park Default Class").  (*See* Compl. ¶ 25.)

The complaint alleges numerous claims under 42 U.S.C. § 1983 for violations of plaintiffs' rights under the Due Process Clause of the United States Constitution and Article 24

---

[4] None of the plaintiffs who have paid their citations availed themselves of their right to contest liability in the District Court.  (*See* Pl.'s Opp. at 6, 14-16 (stating that "no judgments were taken" against these plaintiffs because "the matters were resolved prior to any judgment being rendered").)

[5] Plaintiffs moved for class certification pursuant to Rule 23 on April 24, 2012.  (ECF No. 2.) Defendants opposed the motion on July 13, 2012.  (ECF No. 27.)  Plaintiffs filed a reply on July 30, 2012.  (ECF No. 31.)  In light of the fact that I am dismissing plaintiffs' claims, that motion is denied as moot.

of the Declaration of Rights in the Maryland Constitution.[6]  In counts one through four, plaintiffs allege that the citations issued by defendants did not include information required by section 21-809 of the Maryland Transportation Article.  (*See* Compl. ¶¶ 38-57.)  Specifically, plaintiffs contend that section 21-809(e) requires speed monitoring system citations to include a sworn certificate notifying recipients of the requirements imposed on defendants by section 21-809(b) and expressly affirming that each of those requirements has been satisfied.  Plaintiffs maintain that the exclusion of this information amounts to a denial of due process.  In counts five through eight, plaintiffs allege that their due process rights were violated when defendants sought to enter the citations into evidence at trial despite the deficiencies described in counts one through four. (*See* Compl. ¶¶ 58-77.)  In counts nine through twelve, plaintiffs allege that their due process rights were violated when defendants secured judgments against them without satisfying their burden of establishing each element of the violation at trial.  (*See* Compl. ¶¶ 78-97.)  Because the District Court entered judgments against plaintiffs on the basis of inadmissible or deficient evidence, plaintiffs allege, the judgments were invalid and defendants failed to establish plaintiffs' liability.  In counts thirteen through sixteen, plaintiffs allege that their due process rights were violated because the citations were electronically signed and thus were not sworn affidavits.  (*See* Compl. ¶¶ 98-117.)  And finally, in counts seventeen through twenty, plaintiffs allege that their due process rights were violated when defendants served the citations via first-class mail.  (*See* Compl. ¶¶ 118-137.)

---

[6] Both parties also expend considerable effort debating whether defendants complied with the requirements of section 21-809 governing the content of citations.  For reasons discussed below, this argument is irrelevant to the merits of plaintiffs' § 1983 claims.  The relevant question is whether the procedures afforded by defendants (and the Maryland legislature) were sufficient to satisfy plaintiffs' constitutional right to due process of law.

Plaintiffs ask this court to declare that each of the allegations above constituted a deprivation of plaintiffs' constitutional rights.  (Compl. at 52.)  Plaintiffs further seek damages commensurate with the total amount of the citations issued to them by defendants as well as plaintiffs' costs in the District Court.  (Compl. at 52-53.)  Finally, plaintiffs pray for attorneys' fees, costs, pre- and post-judgment interest, and all other remedies that equitably and reasonably flow from defendants' deprivations of plaintiffs' due process rights.  (Compl. at 53.)

## STANDARD

Defendants have moved to dismiss or, in the alternative, for summary judgment.[7]  When a court considers matters outside the pleadings, ordinarily "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  But a court deciding a motion to dismiss "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted).  Because this litigation concerns the contents of the citations attached to defendants' motion and plaintiffs do not challenge the authenticity of those citations, defendants' motion could be treated as a motion to dismiss without requiring this court to disregard the attached citations.

A Rule 12(b)(6) motion, however, "is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses."  *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).  The court may reach the merits of an

---

[7] Plaintiffs also have moved for judgment on the pleadings pursuant to Rule 12(c).  Rule 12(c) states that such a motion is appropriate only "[a]fter the pleadings are closed," however, and defendants have not yet filed their answer.  In any event, plaintiffs' motion is denied.

affirmative defense on a motion to dismiss only "in the relatively rare circumstances where facts sufficient to rule on [the] affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Defendants' motion raises affirmative defenses such as *res judicata* and waiver, and the facts alleged in the complaint are insufficient to permit this court to reach the merits of those defenses on a motion under Rule 12(b)(6).

Defendants' motion therefore must be treated as a motion for summary judgment. As a general matter, conversion of a motion to dismiss into one for summary judgment "is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). But "the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (internal quotation marks omitted). Plaintiffs do not seek discovery. They expressly concede that "there are no factual disputes" and themselves have moved for judgment on the pleadings pursuant to Rule 12(c). (*See* Pl.'s Opp. at 2.) It is therefore appropriate to treat defendants' motion as one for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Conversely, the motion should be denied if "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia*

*Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**ANALYSIS**

Defendants' motion raises a smorgasbord of defenses: lack of standing, the *Rooker-Feldman* doctrine, *res judicata*, waiver, and failure to state a claim.  Because standing and the *Rooker-Feldman* doctrine are jurisdictional, those arguments are addressed first.  I will then turn to the affirmative defenses before addressing the merits of plaintiffs' claims.

**I.       Standing**

Article III of the United States Constitution restricts the power of the federal judiciary to the adjudication of certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  The most fundamental aspect of the case-or-controversy requirement is the doctrine of standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).  Standing, like ripeness and mootness, incorporates "merely prudential considerations that are part of judicial self-government," but "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Whether a plaintiff has standing to bring suit is a jurisdictional question that must be resolved before addressing the merits of the claim.  *Steel Co.*, 523 U.S. at 89-93.  Three elements comprise the "irreducible constitutional minimum of standing":  (1) the plaintiff must have suffered an "injury in fact," (2) the injury must be "fairly traceable" to the defendant's challenged conduct, and (3) it must be likely that the plaintiff's injury would be redressed by the requested relief.  *Lujan*, 504 U.S. at 560-61.

Plaintiffs' purported injuries are traceable to defendants' conduct.  Plaintiffs allege that the traffic citations issued to them by defendants were constitutionally deficient, both in terms of their contents as well as the manner in which they were used and proven at trial.  (*See* Compl. ¶¶ 17-22.)  Defendants do not deny that they issued the citations, imposed and collected the related fines, and sought default judgments against those plaintiffs who failed to pay the fines.  To the extent that plaintiffs suffered injuries, those injuries are traceable to defendants.

Because this suit seeks only retrospective relief, moreover, the requested relief would redress plaintiffs' alleged injuries.  If plaintiffs also sought prospective relief in the form an injunction or declaratory judgment, they would bear the burden of establishing each element of standing for both retrospective and prospective relief.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  That is a high burden.  To show that an injunction or declaratory judgment would redress their injuries and would not constitute a mere advisory opinion, plaintiffs would need to demonstrate a "real and immediate threat" that they would again be cited for speeding by a speed camera and would again receive ostensibly deficient citations.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-16 (1983).  But plaintiffs do not seek prospective relief and need not establish such a threat.  The complaint prays for damages, a declaration that defendants have deprived plaintiffs of their due process rights, and "all other remedies that equitably and reasonably flow" from the alleged deprivations.  (Compl. at 52-53 ¶¶ E-H.)  This requested relief is retrospective in nature, and plaintiffs' alleged injuries would be redressed by defendants' payment of monetary damages.  *See Lyons*, 461 U.S. at 105.

That leaves only the question of injury.  To survive a motion to dismiss, plaintiffs must allege an injury that is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical.  *Lujan*, 504 U.S. at 560.  The injury, moreover, must constitute an

invasion of a legally protected interest.  *Id.*  Defendants advance several arguments disputing the validity of plaintiffs' purported injuries.  Defendants first contend that plaintiffs' "right to speed" is not a legally protected interest whose infringement confers Article III standing.  Plaintiffs, however, do not seek to vindicate a right to speed; they seek damages for alleged constitutional violations tied to the contents of the citations, the manner in which they were served, and the manner in which they were used at trial.  The right to be cited, served with process, and tried in accordance with constitutional requirements is undoubtedly a legally protected interest whose invasion would confer standing.

Defendants also contend that the two putative default classes of plaintiffs lack standing because "they are attempting to secure an impermissible adjudication of a 'general grievance.'" (Def.'s Reply at 24 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995))).  But *Hays* and other general-grievance cases are inapposite.  The prohibition of adjudicating general grievances in the federal courts serves to restrict access to those individuals who have suffered a personal injury.  *See Allen v. Wright*, 468 U.S. 737, 755 (1984).  An individual cannot challenge a statute unless that person has "more than 'a general interest common to all members of the public.'" *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). Plaintiffs here easily satisfy that standard.  This is not a class action on behalf of all citizens of these two Maryland towns; the putative classes are composed of individuals who have received speeding citations through the speed monitoring systems and who have either paid the citations or had default judgments entered against them.  The alleged injuries are, in short, concrete and particularized.

The heart of defendants' challenge to plaintiffs' standing is their argument that certain plaintiffs suffered no injury because they "declined to avail themselves of the process that

Defendants provided." (Mot. Dismiss at 21.) Focusing on those plaintiffs who never contested their citations in state court, defendants cite *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 711 (M.D.N.C. 2003), for the proposition that a plaintiff who "has not availed himself of the process Defendants have provided" lacks standing. Because a procedural due process violation is not complete "unless and until the State fails to provide Due Process," *see Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990), *Shavitz* concluded that a plaintiff who never affords the state an opportunity to provide due process cannot suffer a due process violation and that such a plaintiff therefore has not suffered an "injury in fact" capable of conferring standing to challenge the process that would have been available to him. *Shavitz*, 270 F. Supp. 2d at 711.

But *Shavitz* has been criticized, appropriately, for conflating the merits analysis of a claim under 42 U.S.C. § 1983 with the standing inquiry. *See Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 598 (E.D. La. 2008); *see also Ashley v. NLRB*, 454 F. Supp. 2d 441, 445 (M.D.N.C. 2006) (stating that *Shavitz* is "unpersuasive"). As explained below, those plaintiffs who elected not to stand trial have failed to state a cognizable claim, as it is difficult to see how the alleged deprivations of due process that occurred in the District Court somehow injured the plaintiffs who elected not to appear in that court. That, however, is an argument to be raised on a motion under Rule 12(b)(6) rather than Rule 12(b)(1). For standing purposes, it is sufficient to allege that the threatened deprivation of adequate procedures itself caused an injury. The *Shavitz* approach would transform affirmative defenses such as waiver, estoppel, consent, and failure to exhaust into jurisdictional components of Article III standing. That would be a broad departure from current federal practice.

## II.     The *Rooker-Feldman* Doctrine

Defendants next contend that the *Rooker-Feldman* doctrine deprives this court of subject matter jurisdiction to adjudicate plaintiffs' claims.  In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court held that the lower federal courts do not have jurisdiction to review state-court judgments.  Because 28 U.S.C. § 1257 lodges appellate jurisdiction to reverse or modify a state-court judgment exclusively in the United States Supreme Court, the lower federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

*Rooker-Feldman* does not, however, divest the lower federal courts of subject matter jurisdiction to adjudicate all cases in which a party seeks to litigate a matter previously litigated in state court.  It bars only direct collateral attacks in which the plaintiff seeks to reverse or modify the state-court judgment.  *Id.* at 293; *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006).  "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."[8]  *Exxon*, 544 U.S. at 293 (internal quotation marks and alterations omitted).

The Fourth Circuit, in several decisions cited by defendants, previously interpreted *Rooker-Feldman* to prohibit all suits seeking to relitigate constitutional issues raised in state court.  (*See* Mot. Dismiss at 28.)  Each of those decisions, however, predates *Exxon* and *Davani v. Va. Dep't*

---

[8] "*Rooker-Feldman* is not simply preclusion by another name."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006).  "Incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act."  *Id.*

*of Transp.*, 434 F.3d 712 (4th Cir. 2006).  Noting that its prior cases "ha[d] given the *Rooker-Feldman* doctrine an expansive reading" that essentially created "a jurisdictional doctrine of res judicata," *Davani* reversed course and construed *Exxon* to limit the application of *Rooker-Feldman* to suits seeking direct review of state-court judgments.[9]  *Davani*, 434 F.3d at 717-19.  Since *Exxon* and *Davani*, this court must "examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself."  *Id.* at 718.

Plaintiffs do not ask this court to overturn the judgments issued by the District Court, and their complaint does not allege that the District Court judgments caused the injuries for which they seek redress.  Rather, they allege that their injuries occurred when defendants violated their procedural due process rights.  These alleged injuries therefore preceded the default judgments issued by the District Court, and this court need not review the District Court judgments to determine the merits of plaintiffs' § 1983 claims.  *See Skinner*, 131 S. Ct. at 1297-98 ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.").  This suit perhaps raises constitutional issues that plaintiffs raised in state court—or that could have been raised in that court.  But plaintiffs do not seek redress for injuries caused by the state-court judgment; they seek compensation for injuries caused by defendants.  *Cf. Bolden v. City of Topeka*, 441 F.3d 1129, 1138, 1145 (10th Cir. 2006) (holding *Rooker-Feldman* inapplicable where allegations underlying plaintiffs'

---

[9] In circumscribing the broad scope of *Rooker-Feldman*, the *Exxon* Court admonished those lower courts that had construed the doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 17 U.S.C. § 1738."  *Exxon*, 544 U.S. at 283.  The Supreme Court has pointed out that it has applied the *Rooker-Feldman* doctrine only twice—in *Rooker* and *Feldman*.  *See Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011); *Lance*, 546 U.S. at 463-65; *Exxon*, 544 U.S. at 283.

federal-court claims "are identical to what they would have been had there been no state-court proceeding").  Even if this court awards relief to plaintiffs under § 1983, moreover, the state-court judgments against plaintiffs will stand.  *Cf. Johnson v. Ohio Supreme Court*, 156 F. App'x 779, 782 (6th Cir. 2005) (holding that *Rooker-Feldman* barred § 1983 claims where plaintiff asked federal court to enjoin state courts from denying her requested relief).  The *Rooker-Feldman* doctrine therefore does not apply.  *See Davani*, 434 F.3d at 719; *Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005).

### III.     Waiver

Defendants claim that all plaintiffs who paid their citations thereby waived their right to seek damages under § 1983.  A disclaimer conspicuously printed on each citation states, "PAYMENT OF THE PENALTY AMOUNT FOR THE VIOLATION IS AN ADMISSION OF LIABILITY . . . ."  (Mot. Dismiss Ex. B & Ex. C.)  Defendants argue that payment of the civil penalty and forfeiture of plaintiffs' right to contest liability in the District Court amounts to a waiver of plaintiffs' right to seek redress for all damages associated with the speed monitoring system citations.  Defendants analogize plaintiffs' purported waiver to a settlement agreement or consent decree.  (*See* Mot. Dismiss at 30-33.)

Defendants' analogy is inapt, however, and the cases defendants cite are inapplicable. Defendants rely heavily on *Long v. State*, 807 A.2d 1 (Md. 2002), *Chernick v. Chernick*, 610 A.2d 770 (Md. 1992), and *Suter v. Stuckey*, 935 A.2d 730 (Md. 2007).  Those cases each concern consent decrees, defined as "agreements entered into by the parties which must be endorsed by the court."[10]  *Chernick*, 610 A.2d at 774; *see also United States v. Armour & Co.*, 402 U.S. 673,

---

[10] The language from *Suter* cited in defendants' motion specifically concerns a litigant's right to appeal a consent judgment to which that party previously agreed or acquiesced.  The principle articulated in *Suter* bars a litigant who consents to the trial court's judgment from subsequently

681 (1971) ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms."). But the disclaimer clause printed on plaintiffs' citations was not "an agreement that the parties desire[d]." *See Long*, 807 A.2d at 7. Plaintiffs expressed no desire to admit liability, never consented to the disclaimer, and never negotiated with defendants to determine the legal consequences of their payments. No benefit accrued to plaintiffs because of their payments. Maryland jurisprudence concerning consent decrees thus is inapplicable.

Furthermore, the plain language of the "admission of liability" clause does not support defendants' argument. Assuming that clause to be valid and enforceable, it simply constitutes an admission that plaintiffs were speeding in violation of the law at the time they were photographed by the speed monitoring system. If plaintiffs came to federal court to deny liability, they would have to confront their prior admission of liability. But plaintiffs have not come to federal court to dispute the fact that they violated the law. Rather, they allege that their constitutional rights were infringed by the manner in which plaintiffs served and prosecuted the citations. "[B]y paying the speed monitoring system penalties for issued citations, [plaintiffs] did not waive their right to pursue subsequently a claim against [defendants] for violating Transportation Article § 21-809[], if such a claim is otherwise actionable." *Baker v. Montgomery Cnty.*, 50 A.3d 1112, 1121 (Md. 2012).

## IV.   *Res Judicata*

Defendants also maintain that plaintiffs' claims are precluded by the hearings that were made available to them in the District Court. The Full Faith and Credit Act provides that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the

---

decrying the legitimacy of that judgment before the court of appeals. *See* 935 A.2d at 739. No such scenario is present here.

United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Maryland law therefore must guide this court's determination of the preclusive effect of prior state-court judgments against plaintiffs.

The doctrine of *res judicata*—known in some courts as claim preclusion or direct estoppel—forbids the relitigation of a claim that was decided or could have been decided in a prior suit.[11] *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005). In Maryland the doctrine of *res judicata* includes three elements: "(1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits." *Id.*

I begin with the third element. Those plaintiffs who paid their citations without contesting liability in the District Court never received a final judgment on the merits, and they are not precluded from pursuing their § 1983 claims in federal court. Although anyone who receives a speed monitoring system citation is entitled to a court hearing, that person must write to the county or municipality that issued the citation and request a hearing; the hearing is not scheduled

---

[11] Defendants also cite *Klein v. Whitehead*, 389 A.2d 374 (Md. 1978), for the proposition that plaintiffs' § 1983 claims amount to an impermissible collateral attack on the prior judgments. *Klein* distinguished the doctrine of collateral attack from the doctrines of *res judicata* and collateral estoppel. 389 A.2d at 381, 385-86. But in *Kris Jen Ltd. v. Fairfax Sav., F.S.B.*, 639 A.2d 206, 210 (Md. App. 1994), the Maryland Court of Special Appeals concluded that *Rowland v. Harrison*, 577 A.2d 51 (Md. 1990), had modified the portion of *Klein* that prohibits collateral attacks. In *Fairfax Sav., F.S.B.*, 655 A.2d at 1270, the Maryland Court of Appeals cited that portion of *Kris Jen Ltd.* approvingly and folded the collateral attack rule into its discussion of *res judicata*.

unless and until the written request is received.  (Mot. Dismiss Ex. B & Ex. C; Md. Code Ann.,

Cts. & Jud. Proc. § 7-302(e)(1); Md. Code Ann., Transp. § 21-809(c)(3)(ii) (stating that persons

may "prepay the civil penalty without appearing in District Court").)  Members of the putative

Forest Heights Paid Class and Riverdale Park Paid Class each paid their citations without

requesting or receiving a court hearing, and no court issued a final judgment on the merits.[12]

Accordingly, Maryland law does not preclude those plaintiffs from asserting their § 1983 claims.

   Members of the default classes, on the other hand, did receive a final judgment on the merits.

"[F]or *res judicata* purposes a default judgment is given the same effect as a judgment entered

after a trial on the merits."  *Sheahy v. Primus Auto. Fin. Servs., Inc.*, 284 F. Supp. 2d 278, 281

(D. Md. 2003); *see also Kim v. Council of Unit Owners*, 952 A.2d 346, 356-57 (Md. App. 2008).

Plaintiffs allege that the District Court entered default judgments against each member of the

Forest Heights Default Class and Riverdale Park Default Class, (Compl. § 27), and the third

element of the *res judicata* standard has been satisfied with respect to those plaintiffs.

   The first element also has been satisfied.  The citations were issued by either the Town of

Forest Heights or the Town of Riverdale Park—the two defendants in this § 1983 action.  Those

plaintiffs who elected to contest their citations did so by notifying defendants of that election,

and civil penalties collected through the school-zone speed monitoring systems were remitted to

---

[12] In Maryland the speed monitoring system citation is mailed by the issuing agency and the civil penalty is paid directly to the county or municipality that issued the citation. *See* Md. Code Ann., Transp. § 21-809(d)(1), (5)(i).  The preclusive effect of prepayment may differ in jurisdictions where payments are made to the state court or where the citation is issued by the state court rather than the county, municipality, or state.

defendants.  *See* Md. Code Ann., Cts. & Jud. Proc. § 7-302(e).  The parties to the District Court

proceedings therefore were the same parties who appear in this litigation.[13]

The final inquiry is whether the claims asserted in this litigation are identical to the claims

adjudicated in the District Court proceedings.  Maryland has adopted the transactional approach,

which asks whether the claims in this litigation "arise[] out of the same transaction or series of

transactions as the claim resolved by the prior judgment."  *Laurel Sand & Gravel, Inc. v. Wilson*,

519 F.3d 156, 162 (4th Cir. 2008) (internal quotation marks omitted).  "All matters which were

litigated or *could* have been litigated in the earlier case are conclusive in the subsequent

proceeding."  *Norville*, 887 A.2d at 1038 (internal quotation marks omitted).

Application of that broad standard would be straightforward.  Plaintiffs could have raised

both statutory and constitutional defenses in state court proceedings.  When adjudicating alleged

speed monitoring system violations, section 21-809(f)(1)(iii) of the Maryland Transportation

Article authorizes the District Court to consider in defense of a violation any "issues and

evidence that the District Court deems pertinent."  Plaintiffs therefore could have argued to the

District Court that their citations "failed to meet the numerous requirements of [section 21-809]"

and also could have raised their federal and state constitutional objections.  *See State v. Cates*, 12

A.3d 116, 119 (Md. 2011).  Like the plaintiffs in *Cates*, these plaintiffs could have elected to

stand trial in the District Court and, had that court found them liable, could have appealed to the

Circuit Court, which would have tried their claims *de novo*.  *See id.* at 122.  Had the Circuit

Court rejected plaintiffs' due process defenses, moreover, as it did in *Cates*, plaintiffs could have

renewed those objections before the Maryland Court of Special Appeals and the Maryland Court

---

[13] It is immaterial that some plaintiffs never actually appeared in the District Court to contest their citations.  As I explained above, a default judgment is given the same preclusive effect as a judgment entered after a trial on the merits.

of Appeals.  *See id.*  Indeed, plaintiffs could have sought review of their federal constitutional defenses from the Supreme Court of the United States.  Having elected not to raise those defenses in the prior proceedings, the transactional approach seemingly would preclude plaintiffs from raising them now.

But plaintiffs present their constitutional arguments not as defenses but as standalone claims under § 1983.  These claims could have been raised as counterclaims in plaintiffs' District Court proceedings; those proceedings were civil rather than criminal, and the District Court has exclusive original civil jurisdiction over tort claims in which the claimed damages do not exceed $30,000.[14]  Md. Code Ann., Cts. & Jud. Proc. § 4-401(1).  But all counterclaims are permissive under Maryland law, and Maryland therefore has adopted the Restatement approach, rather than the transactional approach, with respect to the preclusive effect of a litigant's failure to assert a counterclaim in a prior proceeding.  *See Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1269 (Md. 1995); *Rowland v. Harrison*, 577 A.2d 51, 55-57 (Md. 1990); *Green v. Ford Motor Credit Co.*, 828 A.2d 821, 828 (Md. App. 2003).  Under that approach, a defendant who "may interpose a claim as a counterclaim but . . . fails to do so . . . is not thereby precluded from maintaining an action on that claim" unless "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."  Restatement (Second) of Judgments § 22.  The second claim is not precluded simply because "the facts constituting a defense [to the first claim] also form the basis of the counterclaim.  The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for

---

[14] Although § 1983 does not impose liability for all tortious conduct under the color of state law, a claim under § 1983 is analogous to a tort claim.  *See Monroe v. Pape*, 365 U.S. 167, 187 (1961) (stating that § 1983 must be interpreted "against the background of tort liability that makes a [person] responsible for the natural consequences of his actions").

example, by allowing the defendant . . . to recover on a restitution theory the amount paid pursuant to the judgment . . . or by depriving the plaintiff in the first action of property rights vested in him under the first judgment . . . ."  Restatement (Second) of Judgments § 22 cmt. f.

Thus, to determine whether resolution of the § 1983 claims in plaintiffs' favor would nullify the default judgments entered by the District Court, the court must look to the relief that would be available to plaintiffs.  Compensatory damages for violations of § 1983 must be based on the actual injuries that plaintiffs suffered.  *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978).  Consistent with this limitation, plaintiffs here ask this court to award "any and all amounts sought and/or secured by judgment on [plaintiffs'] citations" and all costs imposed on plaintiffs by the District Court.  (Compl. 52-53 ¶ F.)  Thus, while plaintiffs do not ask this court to overturn or vacate the default judgments, they seek to accomplish the same result by asking this court to award the exact amount of damages required to satisfy their outstanding judgments.  That outcome is plainly forbidden by the doctrine of *res judicata*.  *See Hawkins v. Citicorp Credit Servs., Inc.*, 665 F. Supp. 2d 518, 526 (D. Md. 2009); *Sheahy*, 284 F. Supp. 2d at 283 & n.5.

Accordingly, the members of the putative Town of Forest Heights Default Class and Town of Riverdale Park Default Class are precluded from recovering damages under § 1983 for alleged violations of their federal rights.  All three elements of *res judicata* have been satisfied with respect to the default plaintiffs.  But the claims asserted by the Forest Heights Paid Class and Riverdale Park Paid Class are not precluded because the District Court never entered a final judgment on the merits with respect to those plaintiffs.[15]

---

[15] Although *Rooker-Feldman* is inapplicable here and the particularities of the Maryland Transportation Article prevent me from dismissing these plaintiffs' claims on the basis of *res judicata*, fundamental principles of federalism, constitutional avoidance, and judicial economy nevertheless suggest that these claims should have been raised in the District Court of Maryland rather than federal court.  Federal courts, of course, should not decline to exercise jurisdiction

## V.      Merits of § 1983 Claims

I turn now to the merits of plaintiffs' arguments.[16]  Plaintiffs seek relief pursuant to 42 U.S.C.

§ 1983 for defendants' alleged violations of their right to due process of law.  "To state a claim

under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws

---

merely because those same questions of law can be adjudicated in the state courts.  *See Zwickler v. Koota*, 389 U.S. 241, 248 (1967).  But our Constitution and laws also seek "to prevent needless friction between state and federal courts."  *See Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940).  Had all plaintiffs raised their statutory and constitutional objections in the District Court and appealed those decisions through the state court system, the state courts perhaps would have granted plaintiffs' requested relief on statutory grounds and thereby avoided the federal constitutional questions.  *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345-48 (1936) (Brandeis, J., concurring) (discussing principles of constitutional avoidance).  Furthermore, the interests of judicial economy would be better served if, rather than invoking federal jurisdiction, plaintiffs availed themselves of their right to state court proceedings before state trial and appellate courts that are more familiar with the relevant Maryland statutes.  Whereas § 1983 provides a remedy only for violations of federal law and therefore does not allow this court to reach the questions of state law raised in plaintiffs' complaint, the state courts could have adjudicated all of those claims and defenses in the same proceeding.  And perhaps most significantly, allowing the Maryland courts to adjudicate these claims—subject to review in the United States Supreme Court—potentially would avoid unnecessary intrusion by the federal courts into issues of state governance and would demonstrate respect for the state's interest in establishing independent regulatory systems.  *Cf. Younger v. Harris*, 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.").  Because jurisdiction over plaintiffs' claims lies with this court, however, and neither federal abstention doctrines nor Maryland rules of *res judicata* are applicable, plaintiffs are entitled to avail themselves of this forum without first exhausting their state remedies.  *See Heck v. Humphrey*, 512 U.S. 477, 480 (1994) ("In general, exhaustion of state remedies 'is *not* a prerequisite to an action under § 1983.'" (quoting *Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982))); *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the constitution.").

[16] Although I find the default plaintiffs' claims to be precluded, I nevertheless examine the merits of those claims along with the claims asserted by members of the putative paid classes.  I am doing so to prevent unnecessary delay and expense in the event that my *res judicata* ruling concerning the default plaintiffs is reversed on appeal.

of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 does not create substantive rights; rather, it provides a method for vindicating federal constitutional or statutory rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As a threshold matter, plaintiffs paint with too broad a brush.  The complaint alleges that defendants violated due process rights guaranteed by the United States Constitution and Article 24 of the Declaration of Rights in the Maryland Constitution.  But the Maryland Constitution cannot be the source of substantive rights enforceable under § 1983 because that statute creates a cause of action only for violations of federal rights.  *See Baker v. McCollan*, 443 U.S. 137, 146-47 (1979).  Plaintiffs also erroneously link their claim for relief with defendants' alleged failure to provide a citation that conformed to the requirements of section 21-809(b) of the Maryland Transportation Article.  Even if plaintiffs are correct that the citations contravene Maryland law—an issue this court does not reach—that allegation does not give rise to a cognizable claim under § 1983.  A violation of state law is neither necessary nor sufficient to maintain an action under § 1983.  *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988).  To the extent the parties have attempted to dissect the myriad requirements imposed by the Maryland Transportation Article, those efforts have been misplaced.

The relevant inquiry is whether defendants' conduct deprived plaintiffs of rights secured by the Due Process Clause of the Fourteenth Amendment.  The Due Process Clause includes both procedural and substantive components.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Substantive and procedural due process claims under § 1983 require different inquiries.  The substantive component "bar[s] certain government actions regardless of the fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  To

determine the merits of a procedural due process claim, on the other hand, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126.  Each component of the Due Process Clause therefore will be assessed in turn.

A.  Procedural Due Process

Because the procedures at issue here potentially result in the imposition of a civil penalty, plaintiffs have a protected property interest in receiving constitutionally adequate process.  *See Wemhoff v. City of Baltimore*, 591 F. Supp. 2d 804, 810 (D. Md. 2008).  But that interest is minimal relative to defendants' interest in the efficient administration of justice.  "Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (internal citations omitted); *see also Goss v. Lopez*, 419 U.S. 565, 579 (1975).  Plaintiffs each were provided notice and an opportunity to be heard.  Plaintiffs who declined to avail themselves of their opportunity to appear have suffered no injury and therefore fail to state a claim upon which this court may grant relief.  *See Mora*, 519 F.3d at 230 ("[Plaintiff] has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.").

And the few plaintiffs who did appear in the District Court—plaintiffs whose claims are precluded—received adequate process.  Notice is constitutionally adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Plaintiffs wrongly contend that notice via first-class mail is *per se* inadequate.  Courts have long held that notice by mail is sufficient when reasonably calculated to reach the interested parties.  *See, e.g.*, *Tulsa Prof'l Collection Servs., Inc. v. Pope*,

485 U.S. 478, 490 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983);

*Elmco Props., Inc. v. Second Nat. Fed. Sav. Ass'n*, 94 F.3d 914, 921 (4th Cir. 1996); *Wemhoff*,

591 F. Supp. 2d at 810.  Plaintiffs received actual notice of their right to contest liability, and

they cannot be heard to complain about the insufficiency of the first-class mails when those

means have proven themselves adequate to inform plaintiffs of their right to appear in the

District Court.  *See Mora*, 519 F.3d at 230.

Nor did the default plaintiffs receive constitutionally deficient hearings.  Three factors are

considered when measuring the adequacy of a state's procedures: (1) "the private interest that

will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The private interest at stake here—plaintiffs' property interest in the forty-dollar civil

penalty—is significant.  That interest, however, is outweighed by defendants' interest in the

efficient enforcement of their traffic laws.  To require defendants to print on each citation a

certificate swearing compliance with each individual requirement of section 21-809(b) would

create a significant administrative burden because the swearing officer would become personally

responsible for investigating and verifying defendants' compliance with the 21-809(b)

requirements.  This would require defendants to allocate additional resources to the speed

monitoring systems.  Imposing that cost on municipalities and states often is justifiable.  Here,

however, there is no reason to believe that the additional procedural safeguards—and heightened

fiscal and administrative burden—demanded by plaintiffs would reduce the likelihood of

erroneous deprivations.  Under the current regime, each speed monitoring system operator must complete a daily set-up log for each speed camera.  Md. Code Ann., Transp. § 21-809(b)(3).  That log is admissible into evidence in District Court trials, § 21-809(b)(3)(iii), and litigants are entitled to require the speed monitoring system operator to be present and to testify at their trials, § 21-809(e)(2).  Furthermore, each speed monitoring system must undergo an annual calibration check, and the signed certificate of calibration also is admissible at trial.  § 21-809(b)(4).  Litigants therefore are afforded adequate opportunities to prove their innocence and to challenge the accuracy and reliability of the speed monitoring systems, and the procedures satisfied defendants' obligations under the Due Process Clause.  *See Plumer v. Maryland*, 915 F.2d 927, 932 (4th Cir. 1990).  Plaintiffs' statutory right to stand trial, deny liability, and summon the speed monitoring system operator also "ameliorates any possible harm caused by the use of the ticket as prima facie evidence."  *See Gardner v. City of Columbus*, 841 F.2d 1272, 1279 (6th Cir. 1988).

Defendants' use of electronic signatures on the citations also does not run afoul of the Due Process Clause.  Each citation includes a signed statement certifying that the motor vehicle depicted on the citation was operated in violation of section 21-809.  (*See* Mot. Dismiss Ex. B & Ex. C.)  Plaintiffs contend that defendants' use of electronic signatures to swear or affirm these certificates is unconstitutional.  But plaintiffs' argument relies on Maryland law rather than the United States Constitution.  *See Gray v. Lewis*, 51 F.3d 426, 438 (4th Cir. 1995) (stating that due process requirements "are defined by the Constitution and do not vary from state to state on the happenstance of a particular state's procedural rules").  And more significantly, there is no reason to conclude that defendants' use of electronic rather than handwritten signatures on the citations somehow deprives the certifications of legal effect.  Maryland has adopted the Uniform

Electronic Transactions Act, which requires electronic signatures to be given the same legal effect as handwritten signatures.  Md. Code Ann., Com. Law § 21-106.  Applying the *Mathews* analysis, moreover, defendants' interest in efficiency strongly outweighs plaintiffs' interest in having an officer sign their citations by hand.  Defendants presumably issue a large number of speed monitoring system citations.  And the risk of an erroneous deprivation resulting from the use of electronic signatures is negated by plaintiffs' statutory right to require speed monitoring system operators to offer sworn testimony at trial.

   B.  Substantive Due Process

"[S]ubstantive due process violations 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation remedies.'"  *Mora,* 519 F.3d 230 (quoting *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).  Plaintiffs' substantive due process claims therefore cannot survive.  The alleged injuries suffered by plaintiffs are not the type of injuries that cannot be avoided by adequate pre-deprivation protections or post-deprivation remedies.  Plaintiffs were permitted to elect to stand trial in the District Court and to raise in that forum each of the arguments they now raise here.  "Maryland's treatment of [plaintiffs] is hardly arbitrary when the state has given [them] the means to correct the errors [they] allege[]."  *See id.*

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiffs' cross-motion for judgment on the pleadings is denied.  A separate order follows.

November 29, 2012
Date

/s/
J. Frederick Motz
United States District Judge